UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

KENNETH D. LIGGINS,

      Plaintiff,

v.                                                                      Civil Action No. 5:09CV00077

CLARKE COUNTY SCHOOL BOARD, et al.,

      Defendants.

## DEFENDANTS' MEMORANDUM
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants Clarke County School Board (the "School Board") and Robina R. Bouffault

("Bouffault"), by counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, state as

follows in support of their motion for summary judgment.

## INTRODUCTION

Plaintiff Kenneth D. Liggins ("Liggins") asserts claims under 42 U.S.C. § 1983 for

violations of his First Amendment (Count I) and Equal Protection rights (Count II). See Second

Amended Complaint (Doc. # 33). Liggins asserts both counts against the School Board and

against Bouffault in her individual capacity.[1] Id. As set forth in detail below, Liggins' claims

must fail because Liggins cannot establish the elements of municipal liability required to hold the

School Board liable under § 1983; Bouffault is entitled to qualified immunity with respect to

both the First Amendment claim and the Equal Protection claim; and Liggins cannot establish a

_____

[1] While the Amended Complaint mentions Bouffault in her official capacity, this Court granted Bouffault's Motion
to Dismiss the claims against her in official capacity as a matter of law. That ruling is the law of the case and to the
extent Liggins is attempting to resurrect the official capacity claims against Bouffault in his Amended Complaint,
those claims should be dismissed.

US_ACTIVE-104224248.2

violation of his First Amendment or Equal Protection rights.  Accordingly, the Defendants are entitled to summary judgment on all of the claims asserted by Liggins.

**STATEMENT OF UNDISPUTED FACTS**

1.     Bouffault is a member of the School Board and was the chairperson of the School Board in April of 2008.  (See Declaration of Robina Bouffault, attached hereto as Exhibit A, at ¶ 2 ("Bouffault Decl."))

2.     Four of the five members of the School Board, including Bouffault, took office in January of 2008.  (Bouffault Decl. at ¶ 3.)

3.     One of the duties of the chairperson of the School Board is to preside at meetings of the School Board.  (Bouffault Decl. at ¶ 4; see also § 2-13 of the By-Laws of the Clarke County School Board, a copy of which is attached as Exhibit 1 to the Bouffault Decl.)

4.     The by-laws of the School Board state that "Individual School Board members shall have no authority or duties except such as may be assigned to them by the School Board as a whole."  (Bouffault Decl. at ¶ 5; see also § 2-11 of the By-Laws of the Clarke County School Board, a copy of which is attached as Exhibit 2 to the Bouffault Decl.)

5.     The School Board held a meeting on Monday, April 14, 2008.  (Bouffault Decl. at ¶ 6. ).

6.     One item that the School Board was scheduled to consider during closed session at the April 14, 2008 meeting was the recommendation of the Acting Superintendent that Brenda Jones, who was at that time the principal of D. G. Cooley Elementary School, be reassigned to a classroom teaching position.  (Bouffault Decl. at ¶ 7. ).

7.      Liggins learned about the School Board meeting from Paul Jones, Ms. Jones' ex-husband, on the Saturday before the meeting.  (Deposition of Kenneth D. Liggins ("Liggins Dep.") at 60:4-21; 65:12-18, the relevant portions of which are attached hereto as Exhibit B.)

8.      Liggins testified that Paul Jones told him that the School Board "was going to demote Brenda Jones, and they have already asked her to write a letter and present it to the School Board." (Liggins Dep. at 60:12-15.)

9.      The April 14, 2008 School Board meeting was scheduled to take place in the library of the Clarke County High School, which had a seating capacity for approximately 50 people.  (Liggins Dep. at 66:22 – 67:8; Bouffault Decl. at ¶ 10.)

10.     Approximately 150 people, including Liggins, attended the April 14, 2008 School Board meeting.   (Liggins Dep. at 59:11-14; 67:21-23; Bouffault Decl. at ¶ 8.)

11.     The crowd of approximately 150 people was much larger than typically attends meetings of the School Board. (Bouffault Decl. at ¶ 9.)

12.     Due to the large crowd, the School Board transferred the meeting from the library to the cafeteria.  (Liggins Dep. at 67:13-20; Bouffault Decl. at ¶ 10.)

13.     Most of the 150 people who attended the April 14, 2008 meeting came to support Brenda Jones and to oppose the pending recommendation that she be demoted.  (Liggins Dep. at 67:24-68:3.)

14.     Liggins testified that some members of the crowd had bitter feelings towards the School Board.  (Liggins Dep. at 80:24 – 81:7.)

15.     Liggins signed up to speak during the public comment portion of the meeting. (Liggins Dep. at  69:16 – 70:3.)

16.     In addition to Liggins, sixteen other speakers (14 individuals and one couple) signed up to speak at the April 14, 2008 meeting.  (Bouffault Decl. at ¶ 13; see also Minutes of the April 14, 2008 School Board meeting ("Meeting Minutes") at pp. 5-9, attached as Exhibit 3 to the Bouffault Decl.)

17.     Ten citizens spoke before Liggins was called to speak.  Of those ten, nine spoke in favor of Brenda Jones and in opposition to the recommendation that she be demoted.  One person spoke on another subject. (Bouffault Decl. at ¶ 14; Meeting Minutes at pp. 5-8.)

18.     As a citizen would speak about Brenda Jones, a number of people in the crowd would clap to express agreement with the speakers and some of them shouted out as the speakers made their comments.   (Liggins Dep. at 74:24 – 75:20.)

19.     The tenth speaker was Paul Jones, who is the ex-husband of Brenda Jones.  While Jones was speaking the crowd began to become particularly excited, so much so that Bouffault asked Jones that he direct his comments to the School Board as not to excite the audience. (Liggins Dep. at 77:11-17; 78:1-12; Bouffault Decl. at ¶ 16.)

20.     Liggins was the eleventh person who was called to speak.  (Bouffault Decl. at ¶ 17; Meeting Minutes at pp. 5-8.)

21.     Liggins began his comments by stating "Be it known that my name is Kenneth D. Liggins.  As I sat and heard what you have already done, it reminded me that you all did, with willful intent, violate Section 7 of the Civil Rights Act."   (Liggins Dep. at 81:15-23; see also Excerpted Transcript of April 14, 2008 Clarke County School Board Meeting ("Meeting Trans.") at 1:12-16, a copy of which is attached as Exhibit 4 to the Declaration of Ms. Bouffault.)

22.     Liggins accused the School Board of having already taken action with respect to the recommendation that Ms. Jones be reassigned. (Liggins Dep. at 83:3-6)

23.     Liggins accused the School Board of having terminated Ms. Jones.    (Liggins Dep. at 83:7-9.)

24.     At the time Liggins made his statements, the School Board had not taken any action on the recommendation that Ms. Jones be reassigned and it had not terminated her. (Bouffault Decl. at 30.)

25.     Liggins testified that no one told him that Ms. Jones had been terminated and that he was speculating when he accused the School Board of having terminated Jones.  (Liggins Dep. at 84:21-25; 85:8-11.)

26.     Liggins further testified that he understood the difference between a termination and a demotion and that his accusation that the School Board had terminated Jones was a calculated statement. (Liggins Dep. at 85:15-22.)

27.     Liggins admitted that his statement that the School Board violated the Civil Rights Act was a calculated and outrageous statement.  (Liggins Dep. at 85:19-25; 153:23 – 154:17.)

28.     Liggins testified that he heard the people in the audience getting excited over his statement to the School Board that they willfully violated the law by terminating Brenda Jones and that some people clapped and shouted. (Liggins Dep. at 95:14-25.)

29.     After Liggins accused the School Board of intentionally violating the law and the audience reacted to that statement, Bouffault became concerned that the meeting would become out of control, particularly given the large size of the crowd and the adversarial attitude of many of the people in the crowd. Thus, Bouffault attempted to interject, stating "Ah, Mr. Liggins." (Meeting Trans. at 1:17.)

30.     Liggins interrupted Bouffault, stating "Wait a minute." (Meeting Trans. at 1:18.)

31.     At that point, Bouffault asked Liggins to sit down, stating "No, no, no. I'm sorry. I have to ask you to sit down." (Meeting Trans. at 1:19-20.)

32.     Liggins refused to sit down. He stated "I can speak – I'm not going to sit down. I'm going to sit down when I want to." (Meeting Trans. at 1:21-23; see also Liggins Dep. at 88:17-25.)

33.     Bouffault believed that Liggins' statements threatened to disrupt the orderly conduct of the meeting. Bouffault feared that, if permitted to continue speaking, Liggins would have further disrupted the meeting and caused the crowd to become out of control. (Bouffault Decl. at ¶ 24.)

34.     Liggins continued to speak, repeatedly interrupting Bouffault and refusing to sit down. (Meeting Trans. at 2:4-19.)

35.     After Liggins repeatedly refused to sit down, Bouffault asked Thomas Judge, the Clerk of the School Board, to call the Sheriff. (Liggins Dep. at 91:14-18.)

36.     Liggins continued to argue with Bouffault, repeating "Have you not terminated her? . . . Have you not terminated her?" (Meeting Trans. at 2:8-13.)

37.     Liggins testified that he stopped speaking and that when he turned away from the podium to return to his seat he saw the Sheriff in the doorway, which was approximately 50 feet away. (Liggins Dep. at 92:6-23; 96:21 – 97:1.)

38.     The Sheriff did not speak to or approach Liggins. (Liggins Dep. at 93:3-8.)

39.     Bouffault apologized to Liggins and to the members of the audience because the School Board could not discuss the personnel matter and it could not respond to the allegations that Liggins made. (Liggins Dep. at 89:11-15.)

40.     The School Board did not take any vote with regard to whether Liggins should have to sit down. (Liggins Dep. at 97:12-16.)

41.     The other School Board members did not indicate agreement with Bouffault. Rather, they remained silent.  (Liggins Dep. at 97:17-20.)

42.     In addition to Liggins, there were thirteen other individuals and one couple who spoke on the subject of the recommendation to reassign Brenda Jones during the public comment portion of the School Board meeting.  (Bouffault Decl. at ¶ 31; Meeting Minutes at pp. 5-9.)

43.     Every speaker who spoke on the topic of Brenda Jones voiced opposition to the recommended reassignment.  Liggins is the only speaker who was asked to sit down during the April 14, 2008 meeting.  (Bouffault Decl. at ¶ 31.)

44.     Liggins is an African American. (Liggins Dep. at 104:2-5.)

45.     Liggins testified that 10 of the individuals who spoke were African American.  In addition, Liggins testified that the couple who spoke were "dark-skinned," but Liggins did not know their race. (Liggins Dep. at 98:20 – 106:7.)

46.     On April 21, 2008 the School Board held a public meeting solely for the purpose of eliciting comments from citizens regarding the criteria that should be utilized by the School Board in assessing the qualifications of applicants for the position of Superintendent.  (Bouffault Decl. at ¶ 32; see also Minutes of April 21, 2008 public hearing ("Public Hearing Minutes") at p. 1, a copy of which is attached as Exhibit 5 to the Bouffault Decl.)

47.     Liggins did not attend the April 21, 2008 School Board meeting.  (Liggins Dep. at 115:4-9.)

48.     Donna Michael, a reading specialist at D.G. Cooley Elementary School, spoke at the April 21, 2008 public hearing. (Bouffault Decl. at ¶ 33; Public Hearing Minutes at p. 2.)

49.     Donna Michael is a white female. (Bouffault Decl. at ¶ 34.)

50.     Michael began her comments by speaking about the situation involving Brenda Jones. (Bouffault Decl. at ¶ 35; Public Hearing Minutes at p. 2.)

51.     Bouffault told Michael that she would either have to confine her comments to the subject of the public hearing or sit down. (Bouffault Decl. at ¶ 36.)

52.     Michael conformed her comments to the topic of the meeting and was permitted to conclude her comments. (Bouffault Decl. at ¶ 37; Liggins Dep. at 121:21 – 122:6.)

53.     At no time did Michael accuse the School Board of taking an illegal action. (Bouffault Decl. at ¶ 38; Liggins Dep. at 122:7-9.)

54.     Michael did not disrupt or threaten to disrupt the orderly conduct of the public hearing. (Bouffault Decl. at ¶ 39.)

## ARGUMENT

### I.     Both of Plaintiff's claims against the School Board must fail because Plaintiff cannot establish liability under § 1983.

A municipality, such as the School Board, "may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, 'that is, acts which the municipality has officially sanctioned or ordered.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988). Moreover, "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." Id. The determination whether a person has "'final policy making authority' is a question of state law." Id.

Judge Phillips' concurring opinion in Collinson v. Gott, 895 F.2d 994 (4th Cir. 1990), is instructive. In Collinson, the president of the county Board of Commissioners directed the plaintiff to stop speaking during the public comment portion of a public meeting and then evicted

him from the meeting.  Judge Phillips held that the Board of Commissioners was entitled to

summary judgment on the plaintiff's § 1983 claims because there was

> no evidence on this summary judgment record that the Board embraced any policy of silencing citizens at public hearings, or that it directly or by knowing inaction condoned Gott's conduct in this case.  Nor can Gott's isolated act be considered an exercise of policymaking power by one empowered to "make policy" for the county in the matter at issue."

895 F.2d at 1004.  Thus, Judge Phillips concluded that the Board could not be liable as a result of

Gott's conduct.  Id.

As in Collinson, Bouffault's single act of directing Plaintiff to stop speaking cannot form

the basis of § 1983 liability for the School Board on either of Liggins' claims.  Under Virginia

law, a School Board "acts through official votes, recorded in the official minutes."  Ashby v. Isle

of Wight County Sch. Bd., 354 F. Supp. 2d 616, 628 (E.D. Va. 2004).  With respect to the First

Amendment claim, the School Board did not adopt a policy of silencing citizens at meetings.[2]

Likewise, with respect to the Equal Protection claim, the School Board did not adopt a policy of

treating speakers differently because of their race.  Accordingly, the School Board did not take

any official action that could give rise to Liggins' claims.  (Facts at ¶ 40.)

Moreover, like the board president in Collinson, Bouffault did not have final policy-

making authority.  Under Virginia law, the School Board has final policy making authority.  See

Va. Const. art. VIII, sec. 7.  Individual board members cannot act on behalf of or bind the School

Board.  See Va. Code § 22.1-71; see also Clarke County School Board By-Laws, § 2-11,

attached as Exhibit 2 to the Bouffault Decl. ("Individual School Board members shall have no

authority or duties except such as may be assigned to them by the School board as a whole.").

---

[2] Nor did the School Board ratify Bouffault's actions.  Ratification of an act requires knowledge of the act and some cognizable action to approve the act.  Ashby, 354 F. Supp. 2d at 627 – 29.  Here, the School Board took no action to approve Bouffault's actions.  (Facts at ¶¶ 40-41.)

Thus, Bouffault did not have final policy-making authority and her actions cannot subject the School Board to municipal liability under § 1983. Accordingly, the School Board is entitled to summary judgment on both of Liggins' claims.

**II      Bouffault is entitled to qualified immunity on Liggins' First Amendment Claim.**

Qualified immunity protects government officials from liability for civil damages in a § 1983 action "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Qualified immunity provides "'an immunity from suit rather than a mere defense to liability,' and therefore 'should be resolved at the earliest possible stage of the litigation.'" Ware v. James City County, 652 F. Supp. 2d 692, 701-02 (E.D. Va. 2009) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) and Anderson v. Creighton, 483 U.S. 635, 646 n. 6 (1987)). The qualified immunity determination should normally be made at the summary judgment stage in the litigation. Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006); see also Ware, 652 F. Supp. 2d at 701-02 ("When a government official properly asserts the defense of qualified immunity, he or she is entitled to summary judgment if either there was no violation of a constitutional right or the right at issue was not clearly established at the time of the alleged misconduct.").

The purpose of the qualified immunity doctrine is to "allow some room for discretionary judgment in what are indisputably difficult circumstances and not to have the prospect of being blind-sided in hindsight discourage officers from the constructive tasks they can in fact perform." Melgar v. Greene, 593 F.3d 348, 357 (4th Cir. 2009). Thus, government officials "will not be held liable, even if they violate statutory or constitutional rights, unless they had prior guidance which would allow them to determine that their contemplated action was improper." Id.

- 10 -

Qualified immunity shields government officials from suits for actions that "would amount to 'bad guesses in gray areas.'" Conley v. Town of Elkton, 381 F. Supp. 2d 514, 524 (W.D. Va. 2005).

To overcome a qualified immunity defense in a § 1983 case, the plaintiff must show that (1) the defendant's action deprived the plaintiff of a protected constitutional right and (2) that the right at issue was so clearly established at the time that a reasonable person in the officials' position would have understood that his actions violated that right. See, e.g., Pearson v. Callahan, 555 U.S. __, 129 S. Ct. 808, 815-16 (2009); Stickley v. Sutherly, 667 F. Supp. 2d 664, 669-70 (W.D. Va. 2009). The determination regarding whether a right was "clearly established" must be made "in light of the specific factual context of the case." Ware, 652 F. Supp. 2d at 701-02; see also Campbell v. Galloway, 483 F.3d 258, 270 (4th Cir. 2007) ("To determine whether the official should have known that his actions violated a right, the court must examine the facts "at a high level of particularity."). As noted by this Court in Stickley, "This narrow focus is particularly crucial in First Amendment §1983 claims, for the inquiry must focus not on whether the official should have known that it was unconstitutional to retaliate against speech generally, but rather on whether a reasonable person would have known that it was unconstitutional to retaliate against the specific speech in question." [3] 667 F. Supp. 2d at 669. As suggested by Judge Phillips in his concurring opinion in Collinson, the inquiry is more nuanced since it involves both the objective and subjective reasonableness of the official. See 895 F.2d at 1001. To paraphrase Judge Phillips' statement of the test: "Would a reasonable person in Bouffault's position, that is, one acting on Bouffault's information and knowledge and motivated by

---

[3] While Stickley involved a First Amendment retaliation claim, the same principle holds true for non-retaliation First Amendment claims, such as the one asserted here.

Bouffault's purpose, have known that to rule Liggins out of order would violate well-established first amendment principles?"[4]

At the time of the April 14, 2008 School Board meeting, the law regarding the circumstances under which a government official presiding over a public meeting could restrict speech was anything but clear.  Indeed, the seminal case within the Fourth Circuit at that time was Collinson, a case in which the three-member panel issued three separate written opinions.[5] In his concurring opinion in Collinson, Judge Philips wrote that an official presiding over a public meeting could restrict speech which he or she "reasonably perceive[s] to be, or imminently to threaten, a disruption of the orderly and fair progress of the discussion, whether by virtue of its irrelevance, its duration, or its very tone and manner."  895 F.2d at 1000 (Philips, J., concurring).  Judge Philips cautioned that such restrictions must be viewpoint neutral.  Id.  Thus, at best, at the time of the April 14, 2008 meeting, it was clearly established that a government official presiding over a public meeting could restrict speech which he reasonably believed disrupted or imminently threatened to disrupt the orderly conduct of the meeting so long as the restriction was viewpoint neutral.  The contours of what constitutes a disruption or imminent threat to disrupt were not clearly established at that time.[6]

---

[4] Although the case dealt with an employee's First Amendment claim, the following observation by this Court in Conley v. Town of Elkton, 381 F. Supp. 2d 514, 524 (W.D. Va. 2005), is apropos here: "Given the 'difficult-to-apply' balancing test that is involved with First Amendment claims, the Fourth Circuit has recognized that courts can rarely say that the law was so clearly established that reasonable officials would have known that an employee's activity was constitutionally protected." (citations omitted.)

[5] In Steinburg v. Chesterfield County Planning Commission, 527 F.3d 377 (4th Cir. 2008), a different three-member panel of the Fourth Circuit adopted the reasoning set forth in Judge Philip's concurring opinion in Collinson. Steinburg, which still does not provide clear guidance on the precise issue presented in this case, was decided on May 29, 2008, approximately six weeks after the meeting at issue here.

[6] Collinson dealt with a public hearing during which comments were being received on a specific topic and a speaker who was ruled out of order because his comments were not relevant to the subject matter of the hearing. Collinson provides no guidance regarding other types of disruption to the orderly conduct of public meetings.

Bouffault is entitled to qualified immunity because a reasonable person in Bouffault's position, acting with Bouffault's knowledge, would not have known that her actions violated Liggins' First Amendment rights.  First, it is clear that Bouffault's actions did not constitute a viewpoint-based restriction.  Liggins expressed the same viewpoint – opposition to the recommended reassignment of Brenda Jones – as fifteen other speakers, all of whom were permitted to express that viewpoint[7].  (Facts at ¶¶ 42-43.)  Accordingly, a reasonable person in Bouffault's position would not have believed that her conduct violated the principle that speech restrictions must be viewpoint neutral.

Second, a reasonable person in Bouffault's position would have believed that Liggins' speech was disruptive to or imminently threatened to disrupt the orderly conduct of the meeting.  There were 150 people in attendance at the meeting – an extremely large crowd for a School Board meeting – and the people were becoming excited.  (Facts at ¶¶ 10-11, 13, 18.)  As Liggins testified, some members of the crowd had bitter feelings towards the School Board.  (Facts at ¶ 14.)  The crowd had been clapping and shouting out in agreement with the speakers.  (Facts at ¶ 18.)  Indeed, Bouffault cautioned the speaker immediately before Liggins not to excite the crowd.  (Facts at ¶ 19.)

Without any foundation and in what even Liggins admits was a calculated and outrageous statement, Liggins began his comments by stating "Be it known that my name is Kenneth D. Liggins.  As I sat and heard what you have already done, it reminded me that you all did, with willful intent, violate Section 7 of the Civil Rights Act."  (Facts at ¶¶ 21-27.)  As Liggins made

---

[7] In his concurring opinion in Collinson, Judge Phillips found that Gott's restriction on Collinson's speech was viewpoint neutral, relying heavily on the fact that numerous other speakers with viewpoints comparable to Collinson's were permitted to express those viewpoints. Collinson, 895 F.2d at 1001 (Phillips, J., concurring.)

this false accusation, people in the audience became even more excited and some people shouted out. (Facts at ¶ 28.)

Bouffault, believing that Liggins' statements threatened to disrupt the orderly conduct of the meeting, attempted to interject. (Facts at ¶ 29.) Liggins rudely interrupted her. (Facts at ¶ 30.) Given his false accusation and the fact that Liggins has interrupted her, Bouffault feared that, if permitted to continue speaking, Liggins would have caused further disruption and caused the crowd to become out of control. Therefore, Bouffault asked Liggins to sit down. (Facts at ¶¶ 31-33.)

Liggins' actions after Bouffault asked him to sit down further underscore the reasonableness of Bouffault's fear. Liggins refused to sit down, rudely stating "I'm not going to sit down. I will sit down when I want to." (Facts at ¶ 32.) Liggins continued to interrupt and argue with Bouffault, repeatedly refusing to sit down, until Bouffault finally requested that the Clerk call the Sheriff. (Facts at ¶¶ 34-35.) Even after Bouffault asked that the Clerk call the Sheriff, however, Liggins continued to argue with Bouffault.[8] (Facts at ¶ 36.)

Based on these facts, it was entirely reasonable for Bouffault to have taken the actions she did. No reasonable official in her position would have believed that Bouffault's actions violated Liggins' First Amendment rights. Accordingly, Bouffault is entitled to qualified immunity with respect to Liggins' First Amendment claim. Moreover, Bouffault is also entitled to qualified immunity because, as set forth below, Liggins cannot establish any violation of his

---

[8] It is clear that Liggins did not stop making his comments because of the appearance of the deputy Sheriff. Liggins testified that he only saw the deputy at the doorway of the cafeteria, approximately 50 feet away, when he turned away from the podium to take his seat after completing his remarks. Liggins Dep. 96:21-97:1. (A Sheriff's department log submitted by Liggins in response to discovery indicates that the deputy did not arrive at the cafeteria until several minutes after Liggins had taken his seat.) The deputy did not approach or talk to Liggins.

First Amendment rights. Therefore, the Court should grant summary judgment in favor of Bouffault in her individual capacity on the First Amendment claim.

**III.     Bouffault is entitled to qualified immunity on the Equal Protection Claim.**

As demonstrated below, Liggins cannot establish a violation of his Equal Protection Rights. See infra § V. In addition, utilizing the qualified immunity standards discussed above, it is clear that Bouffault is entitled to qualified immunity on Liggins' Equal Protection claim. While it is clearly established that Bouffault could not intentionally or purposefully discriminate against Liggins on the basis of his race, a reasonable person in Bouffault's position could hardly have known that it was unconstitutional to treat Michael differently from Liggins under the specific facts of this case. As explained in more detail below, Michael simply strayed from the topic and she immediately conformed her remarks to the topic. (Facts at ¶¶ 50-52.) She did not make calculated false statements in order to rile up the audience and she certainly did not argue with the chair or challenge her authority to preside over the meeting. (Facts at ¶¶ 53-54.) Therefore, assuming it is necessary to reach the issue, Bouffault is entitled to qualified immunity on the Equal Protection claim.

**IV.     Even assuming that Liggins could establish municipal liability under § 1983 and further assuming that Bouffault was not entitled to qualified immunity, the Defendants are entitled to summary judgment on Liggins' First Amendment claim.**

Liggins claims that the Defendants violated his First Amendment rights by not allowing him to finish speaking at the April 14, 2008 meeting. Liggins' claim must fail because his speech posed an imminent threat of disruption to the orderly conduct of the meeting and the restriction was a reasonable, viewpoint neutral restriction.

A governmental entity, such as the school board, creates a limited public forum when it allows public comment during meetings. Steinburg, 527 F.3d at 385. In a limited public forum,

the government entity may impose "reasonable restrictions to preserve the civility and decorum necessary to further the forum's purpose of conducting public business." Id. In Steinburg, the Fourth Circuit explained:

> "Because of government's substantial interest in having [public] meetings conducted with relative orderliness and fairness to all, officials presiding over such meetings must have discretion, under the 'reasonable time, place and manner' constitutional principle, to set subject matter agendas, and to cut off speech which they reasonably perceive to be, or imminently to threaten, a disruption of the orderly and fair progress of the discussion, whether by virtue of its irrelevance, its duration, or its very tone and manner."

527 F.3d at 385 (quoting Collinson, 859 F.2d at 1000 (Phillips, J., concurring).

When determining whether a board chairman who is presiding over a public meeting was reasonable in her belief that certain speech threatened to disrupt the orderly conduct of the meeting, the Court does not ask whether it would have made the same decision or whether the chairman's decision was the best decision. Rather, the appropriate inquiry was whether the chairman acted reasonably. See, e.g., Steinburg, 527 F.3d at 390.

As demonstrated above, see supra § II, Bouffault's actions did not constitute viewpoint discrimination and she reasonably perceived Liggins' false and calculated accusations of illegal conduct to imminently threaten to disrupt the orderly conduct of the meeting. Accordingly, the Defendants are entitled to summary judgment on Liggins' First Amendment Claim.

**V.      The Defendants are Entitled to Summary Judgment on Liggins' Equal Protection Claim.**

Liggins' Equal Protection claims against Bouffault in her individual capacity and, to the extent not disposed of for the reasons set forth above, see supra § I, against the School Board, must fail. The purported basis for Liggins' Equal Protection claim is that because of his race he was treated less favorably than Donna Michael, the reading specialist who spoke during the public hearing conducted by the School Board on April 21, 2008. Liggins claims that he was

told to sit down and that Bouffault directed the Clerk to call the Sheriff after he refused to sit down while Michael was permitted to continue speaking after Bouffault allegedly directed her to sit down.[9]

In order to prevail on an Equal Protection claim, a plaintiff "must first demonstrate that he has been treated differently from others who are similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Veney v. Wyche, 293 F.3d 726 (4th Cir. 2002).   "While an equal protection claim must be rooted in an allegation of unequal treatment for similarly situated individuals, a showing of such disparate treatment, even if the product of erroneous or illegal state action, is not enough by itself to state a constitutional claim. . . . [A] violation of the Equal Protection Clause still requires a showing of clear and intentional discrimination." Sylvia Development Corp. v. Calvert County, 48 F.3d 810, 825 (4th Cir 1995).   Liggins' Equal Protection claim must fail because Liggins cannot establish that he was treated less favorably than similarly situated individuals, nor can he establish that his alleged unequal treatment was the result of intentional or purposeful discrimination based upon his race.

Liggins was not similarly situated to Michael.  Michael spoke during a public hearing that was called for the specific purpose of eliciting comments from citizens regarding the criteria that should be utilized by the School Board in assessing the qualifications of applicants for the position of Superintendent. (Facts at ¶ 46.)  When Ms. Michael began her comments, she spoke about the situation involving Brenda Jones. (Facts at ¶ 50.)  Ms. Michael did not make a false and calculated statement accusing the Board of illegal conduct.  Bouffault told Michael that she would either have to confine her comments to the subject matter of the hearing or sit down.

---

[9] Liggins' admits that he did not attend the April 21, 2008 public hearing and that his only information regarding the hearing comes from newspaper articles.  (Facts at ¶ 47.)

(Facts at ¶ 51.)  Michael immediately and without argument conformed her comments to the subject matter of the hearing and was permitted to complete her comments.  (Facts at ¶ 52.)  She did not argue with Bouffault or challenge Bouffault's authority to conduct the meeting, as did Liggins.  In short, Michael did not disrupt or threaten to disrupt the orderly conduct of the public hearing.  She concluded her comments, speaking about the subject of the hearing, and then took her seat.  (Facts at ¶¶ 52-54.)

Liggins, on the other hand, spoke during the public comment portion of a regular school board meeting, not a public hearing.  Unlike Michael, Liggins threatened to disrupt the orderly conduct of the meeting by falsely accusing the School Board of violating Title VII with "willful intent."  (Facts at ¶ 21-28.)  When directed to sit down, Liggins, unlike Michael, continued to make false accusations, claiming that the School Board had already terminated Ms. Jones.  He continued to argue with Bouffault, challenged the authority of Bouffault as Board chair, and caused further disruption of the meeting until Bouffault finally directed the Clerk to call the Sheriff.  (Facts at ¶¶ 32, 34-36.)  Because the circumstances involving Liggins are substantially different from the circumstances involving Michael, Liggins is not similarly situated to Michael.

Moreover, Liggins cannot establish that his alleged unequal treatment was the result of intentional or purposeful discrimination.  Liggins alleges that he was treated differently than Michael because of his race.  That allegation is belied by the fact that at least ten other speakers at the April 14, 2008 meeting who, like Liggins, supported Brenda Jones and opposed the recommended reassignment, were African American.  (Facts at ¶ 45.)  None of those speakers were told to sit down, nor did Bouffault direct that the Sheriff be called while they were speaking.  (Facts at ¶ 43.)  Accordingly, Liggins cannot establish that his treatment was the result

of international or purposeful racial discrimination.  For these reasons, the Defendants are

entitled to summary judgment on Liggins' Equal Protection claim.

## CONCLUSION

WHEREFORE, Defendants Clarke County School Board and Robina Bouffault

respectfully request that this Court enter an Order granting their motion for summary judgment

on all of the claims asserted herein by Plaintiff Kenneth Liggins and awarding them such further

relief as the Court deems appropriate.

CLARKE COUNTY SCHOOL BOARD AND
ROBINA R. BOUFFAULT

By Counsel

/s/ Stacy L. Haney
D. Patrick Lacy, Esquire (VSB # 07190)
Stacy L. Haney, Esquire (VSB No. 71054)
Reed Smith LLP
Riverfront Plaza – West Tower
901 E. Byrd Street, Suite 1700
Richmond, VA 23219
Telephone:  (804) 344-3400
Facsimile:  (804) 344-3410
placy@reedsmith.com
shaney@reedsmith.com
            Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of July, 2010, a true and correct copy of the

foregoing will be served by hand delivery and first class, U.S. mail, postage prepaid, to the

following:

>Kenneth D. Liggins
>206 Josephine Street
>Berryville, VA 22611
>Pro se Plaintiff

>/s/  Stacy L. Haney
>D. Patrick Lacy, Esquire (VSB # 07190)
>Stacy L. Haney, Esquire (VSB No. 71054)
>Reed Smith LLP
>Riverfront Plaza – West Tower
>901 E. Byrd Street, Suite 1700
>Richmond, VA 23219
>Telephone:  (804) 344-3400
>Facsimile:  (804) 344-3410
>placy@reedsmith.com
>shaney@reedsmith.com
>Counsel for Defendants