CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 28 2010
JULIA C. DUDLEY, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| KENNETH D. LIGGINS, | ) |
| Plaintiff, | ) Civil Action No. 5:09CV00077 |
| v. | ) **MEMORANDUM OPINION** |
| CLARKE COUNTY SCHOOL BOARD, et al., | ) By: Hon. Glen E. Conrad<br>) Chief United States District Judge |
| Defendants. | ) |

This case is presently before the court on the plaintiff's motion for new trial. The court held a hearing on the plaintiff's motion on October 25, 2010. For the reasons stated during the hearing and for those that follow, the plaintiff's motion will be denied.

## Background

The plaintiff, Kenneth D. Liggins, proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, asserting that his rights to free speech and equal protection were violated when defendant Robina R. Bouffault, the chairperson of the Clarke County School Board, stopped him from speaking at an April 14, 2008 School Board meeting. The court denied Bouffault's motion for summary judgment and, by agreement of the parties, the case proceeded to trial solely on the plaintiff's First Amendment claim against Bouffault.

A jury trial was held on September 30, 2010 and October 1, 2010. At the conclusion of the presentation of evidence, the jury was instructed, in pertinent part, as follows:

> The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. This provision applies to state and local governments through the Due Process Clause of the Fourteenth Amendment.

The United States Supreme Court has held that the First Amendment prohibits the government or government officials from regulating speech based on its substantive content or the message it conveys. While this does not mean that the government must allow all speech on all of its property at all times, it does mean that when the government opens its property to private speech, it may not discriminate based upon the viewpoint of the speaker.

Ordinarily, the first inquiry that must be undertaken when a First Amendment claim is asserted is whether the plaintiff engaged in "protected speech" as contemplated by the First Amendment. If the plaintiff engaged in protected speech, the second step is to identify the nature of the forum in which the plaintiff spoke. The third and final step is to determine whether the defendant's justification for stopping the plaintiff from speaking satisfies the requisite standard.

Here, I tell you that the plaintiff's speech was protected under the First Amendment and, thus, the first step in the analysis requires no consideration by you.

I also tell you that the School Board's April 14, 2008 meeting was a limited public forum.

Consequently, you must focus on the third inquiry, which is whether the defendant's justification for stopping the plaintiff from speaking satisfies the requisite standard. I tell you that the defendant bears the burden of proof on this issue.

Government entities, like the Clarke County School Board, have a substantial interest in having meetings conducted with relative orderliness and fairness to all. In a limited public forum like the School Board meeting, government officials are justified in limiting the meeting to the discussion of specified agenda items and in imposing reasonable restrictions to preserve the civility and decorum necessary to further the forum's purpose of conducting public business.

More specifically, officials presiding over such meetings may cut off speech which they reasonably perceive to be, or imminently to threaten, a disruption of the orderly and fair progress of the discussion, whether by virtue of its irrelevance, its duration, or its very tone and manner. The "disruption" to which I refer is not confined to raw, physical violence, but includes any conduct that disrupts the orderly conduct of a meeting.

On the other hand, official discretion at such meetings is not limitless. Officials may not prevent a citizen from speaking, or otherwise discriminate against a speaker, solely on the basis of a speaker's viewpoint.

With these principles in mind, I tell you that if you find that the defendant cut off the plaintiff's speech because she reasonably perceived it to be, or imminently to threaten, a disruption of the orderly and fair progress of the School Board meeting, you must find in favor of the defendant on the First Amendment claim.

However, if you find that the defendant cut off the plaintiff's speech solely because of the viewpoint he expressed, then you must find in favor of the plaintiff on the First Amendment claim.

Again, I tell you that the defendant bears the burden of showing that her decision to stop the plaintiff from speaking was reasonable and not intended to suppress his particular viewpoint.

(Docket No. 110).

The jury ultimately returned a verdict in favor of Bouffault, finding that Bouffault proved, by a preponderance of the evidence, "that the defendant cut off the plaintiff's speech because she reasonably perceived it to be, or imminently to threaten, a disruption of the orderly and fair progress of the School Board meeting." (Docket No. 108). Liggins has now moved for a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure.

## Standard of Review

"The decision to grant or deny a new trial is within the sound discretion of the district court." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998). When considering a motion for new trial under Rule 59(a), the court is "permitted to weigh the evidence and consider the credibility of witnesses." Id. The court will grant a new trial if "(1) the verdict is against the

3

clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice." Id.

## Discussion

I. <u>The Jury Verdict</u>

During the hearing on the instant motion, Liggins argued that the jury's verdict was contrary to the court's opinion on Bouffault's motion for summary judgment and against the clear weight of the evidence. Both arguments, however, are without merit.

As the court explained during the hearing, Liggins' first argument reflects a misunderstanding of the standard of review applicable to summary judgment motions. In deciding whether to grant Bouffault's motion for summary judgment, the court was required to review the record in the light most favorable to Liggins, the non-moving party. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). Thus, the fact that the court found that Liggins presented evidence sufficient to survive summary judgment did not translate into a finding that Liggins would prevail at trial.

During trial, both parties testified at length regarding the School Board meeting, and the jury received the opportunity to hear an audio recording of the meeting. The jury was instructed that it was Bouffault's burden to show that she cut off the plaintiff's speech because she reasonably perceived it to be, or imminently to threaten, a disruption of the orderly and fair progress of the meeting. The jury ultimately credited Bouffault's testimony in this regard and found that she met her burden. Having reviewed the record, the court concludes that the jury's credibility determinations must be left undisturbed, and that the jury verdict was simply not against the clear weight of the evidence.

II. Bouffault's Motion in Limine

In his written motion for new trial, Liggins argues that Bouffault's pretrial motion in limine violated the court's scheduling order, and that the motion was not accompanied by the notice required pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). For the following reasons, the court concludes that both arguments are without merit.

Bouffault's motion in limine was filed on September 23, 2010. Although the scheduling order set forth an August 23, 2010 deadline for filing dispositive motions, the order required the parties to file any objections to deposition testimony or exhibits at least seven days before trial, or in this case, by September 23, 2010. Accordingly, Bouffault's motion was timely filed. Moreover, because Bouffault's motion in limine was not dispositive of the case, no Roseboro notice was required. See Roseboro, 528 F.2d at 310 (requiring that a pro se plaintiff be notified of his right to file material responsive to a dispositive motion). In any event, Liggins received the opportunity to be heard in opposition to the motion in limine, and he has failed to identify any error in the court's rulings with respect to the motion.

III. Statements by Counsel During Closing Argument

Liggins also challenges the propriety of certain statements made by defense counsel during closing argument. Specifically, Liggins contends that counsel improperly characterized the public comments made by Liggins and others during the School Board meeting, as well as the audience's response to the comments.

While Liggins argues that counsel's comments were so prejudicial as to warrant a new trial, he did not object when the statements were made during closing argument and may not do so now for the first time. See Dennis v. General Electric Corp., 762 F.2d 365, 366-367 (4th Cir.

1985) (emphasizing that a party "cannot as a rule remain silent [during closing argument], interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial"). Moreover, the court is unable to conclude that counsel's comments were improper or unduly prejudicial. Thus, even if Liggins had objected during closing argument, he would not be entitled to a new trial.

IV. The Prior Board of Supervisors Meeting

Liggins also argues that because defense counsel was permitted to emphasize, during closing argument, that Liggins was also told to sit down at a meeting of the Clarke County Board of Supervisors, Liggins should have been permitted to explain, during his own closing argument, why he was told to sit down at that meeting. This argument is also without merit.

During trial, Bouffault testified that she had previously attended a meeting of the Clarke County Board of Supervisors at which Liggins was also cut off from speaking. Defense counsel referred to Bouffault's testimony during closing argument, emphasizing that it explained why Bouffault, in the heat of the moment, chose the words she used when asking Liggins to sit down at the subsequent School Board meeting. While Liggins now argues that he should have been able to tell the jury, during his own closing argument, about the circumstances leading up to the Board of Supervisors meeting, such testimony was not appropriate for closing argument or relevant to this case. See United States v. Wilson, 135 F.3d 291, 298 (4th Cir. 1998) (a closing argument must be limited to the facts in evidence or reasonable inferences drawn therefrom).

To the extent Liggins argues that the court erred in admitting Bouffault's testimony about the Board of Supervisors' meeting, Liggins' motion is also denied. The court gave the jury a cautionary instruction that limited the purposes for which the jury could properly consider the

testimony regarding the earlier meeting, and the court is convinced that the instruction mitigated any risk of undue prejudice.

V.   Revision of the Verdict Form

Liggins also argues that he was prejudiced by the fact that the jury was given a revised special verdict form. As previously stated, the court, over the defendant's objection, instructed the jury that it was the defendant's burden to show that her decision to stop the plaintiff from speaking was reasonable and not solely intended to suppress the plaintiff's particular viewpoint. The verdict form that the court initially gave the jury asked whether the jury found, by a preponderance of the evidence, that Bouffault stopped Liggins from speaking solely because of the viewpoint Liggins expressed. Because the court was concerned that the question appeared to place the burden of proof on Liggins, the court presented the jury a revised verdict form, which asked whether the jury found, by a preponderance of the evidence, that the defendant cut off the plaintiff's speech because she reasonably perceived it to be, or imminently to threaten, a disruption of the orderly and fair progress of the School Board meeting. Having reviewed the record, the court remains convinced that the revised verdict form was consistent with the final instructions and that the revision did not prejudice Liggins.

VI.   Jury Deliberations

Liggins also argues that the deliberations were improperly rushed by one of the jurors, who indicated during voir dire that she would be "stressed out" by serving on the jury because she was a college student. As Bouffault emphasizes, however, Liggins was fully aware of the juror's circumstances during jury selection, but chose not to use one of his peremptory strikes to have the juror removed from the jury panel. Accordingly, he cannot now complain about the

juror's presence on the jury. See, e.g., Tidewater Finance Co., Inc. v. Fiserv Solutions, Inc., 192 F.R.D. 516, 526 (E.D. Va. 2000) ("A party is barred from making post-trial challenges to the composition of a jury based on information it knew at the time of voir dire.") (citing McDonough Power Equip. v. Greenwood, 464 U.S. 548, 551 n.2 (1984)).

Additionally, the court agrees with Bouffault that there is no basis for Liggins' claim that the jury failed to properly discharge its duty, and that the mere fact that the jury deliberated for a relatively short period of time is not grounds for a new trial. See Segars v. Atlantic Coast Line Railroad Co., 286 F.2d 767, 769 (4th Cir. 1961) (emphasizing that "[a] short period of deliberation by a jury before returning a verdict does not establish the proposition that the jury did not properly perform its duties" and "may indicate only that the members of the jury felt that the evidence was overwhelming in favor of the party receiving the verdict").

VII. Bouffault's Testimony

In his written motion, Liggins also argues that Bouffault committed perjury when she testified that Paul Jones called her and threatened her three times. To support this argument, Liggins filed an affidavit from Paul Jones, in which Jones avers that he "did not nor [has he] ever called Robina R. Bouffault on the telephone and threatened her concerning Brenda Jones' demotion."

To the extent Jones now claims to have never called Bouffault, his affidavit is inconsistent with his own deposition testimony. During his deposition, which was taken seven weeks before trial, Jones testified that he "called a lot of people" before the School Board meeting. (Jones Dep. at 8). While Jones further testified that he did not specifically remember calling Bouffault, he acknowledged that he "might have" called her. (Jones Dep. at 8).

In addition, if Liggins wanted to challenge Bouffault's testimony regarding the alleged phone call, he could have done so at trial, either on cross-examination or by presenting rebuttal evidence. Liggins failed to do so, and the court is unable to conclude that Jones' affidavit provides a valid basis for a new trial.

VIII.  Racial Composition of the Panel

Liggins also challenges the racial composition of the jury panel, emphasizing that he "had no juror of his peers to select the jury from." In Duren v. Missouri, 439 U.S. 357 (1979), a criminal case, the United States Supreme Court set forth the requirements for establishing a violation of the Sixth Amendment right to a jury drawn from a fair cross-section of the community. Assuming that the same analysis applies in civil cases, Liggins has failed to demonstrate that his right has been violated. Under Duren, a litigant must show, "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Id. at 364. Because Liggins has not attempted to establish any of these elements, his motion for new trial on the basis of the panel's racial composition must be denied.

## Conclusion

For the reasons stated, the court will deny the plaintiff's motion for new trial and direct the Clerk to enter final judgment in favor of the defendant.

The plaintiff is advised that he may appeal this decision pursuant to Rule 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days

9

of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this order and the accompanying memorandum opinion to the plaintiff and all counsel of record.

ENTER: This 28th day of October, 2010.

/s/ Glen Conrad
Chief United States District Judge